IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES BAKER | Magistrate No. 21-20<br>**[UNDER SEAL]** |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Ryan P. O'Sullivan, having been duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") and have been so employed since September 2015. I have received training at the Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Basic Training at the Federal Law Enforcement Training Center. As a Special Agent with the ATF, I have experience and am responsible for investigating violations of federal arson and explosive laws including 26 U.S.C. § 5861(d), which states it is unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." I know that a firearm as defined in 26 U.S.C. § 5845(a) includes a "destructive device." I also know that 26 U.S.C. § 5845(f) includes within its definition of destructive device "(1) any explosive, incendiary, or poison gas bomb" and "(3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled."

2. I also investigate violations of 18 U.S.C. § 922(g)(1), which states that it is unlawful for a previously convicted felon to possess a firearm. A Title 18 "firearm" is also defined to include a "destructive device," and "destructive device" in 18 U.S.C. § 921 has the same definition as in 26 U.S.C. § 5845(f).

3. Both the Title 18 and Title 26 definitions of "destructive device" state that such a device "shall not include any device which is neither designed nor redesigned for use as a weapon". 18 U.S.C. § 921(a)(4); 26 U.S.C. § 5845(f). I am aware that when items such as nails or other small metal pieces that would serve as projectiles are added to bombs, those items can cause harm and are evidence that those devices were designed as weapons.

4. The information contained in this affidavit is based in part on my own investigation as well as information provided by law enforcement personnel and individuals with expert knowledge of the alleged violations being investigated.

5. I make this affidavit in support of an application in support of a criminal complaint charging CHARLES BAKER with one count of possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d), and one count of being a felon in possession of a destructive device, in violation of 18 U.S.C. § 922(g)(1), on or about January 3, 2021.

## PROBABLE CAUSE

6. On Sunday, January 3, 2021, at approximately 8:56 p.m., an explosion occurred in the vicinity of Penn Avenue and Peoria Way in the Lawrenceville neighborhood of Pittsburgh, PA. This is located in the 3600 block of Penn Avenue. Pittsburgh Bureau of Police ("PBP") responded to this location at the request of the fire department. Dispatch advised PBP that an object had been thrown from a vehicle and subsequently exploded.

7. The device thrown from the vehicle landed and ultimately exploded near the rear passenger side tire of an unoccupied, parked white 2020 Subaru Forester ("Forester"). The explosion caused damage to the Forester, to include partially dislodging the rear passenger side quarter panel, breaking off and dispersing plastic material from the rear portion of the vehicle, and causing several nails from the device to penetrate the surface of the passenger side rear tire.

8. The post-blast scene was initially processed on January 3, 2021, by PBP and several items of evidentiary value were recovered that were believed to be used in constructing the device. These items include fragments of a Twisted Tea can, green cloth possibly from a Crown Royal bag, dozens of nails/screws, car parts, and a white powdery substance. These items were submitted to the Allegheny County Forensic Lab to undergo testing.

9. PBP recovered video from a neighboring residence which showed an older model Chevy Silverado truck ("Silverado") driving westbound on Penn Avenue. As the Silverado passed by the Forester, a device was thrown from the passenger window of the Silverado and landed in the rear passenger area of the Forester. When the device was thrown from the Silverado, it was burning in a manner consistent with an improvised initiation system or wick. The device continued to burn and generate smoke for approximately 20 seconds from the time it was thrown from the Silverado until the time it exploded. This video shows that the Silverado continued down Penn Avenue and appeared to slow down as it made a left-hand turn onto Ligonier Street. The explosion occurred approximately five seconds after the Silverado went out of camera view on Ligonier Street. Multiple witnesses advised that they saw a white and green two-toned pick-up truck "fly" up Ligonier Street shortly after the explosion.

10. The Silverado was captured on various cameras operated by the City of Pittsburgh as well as cameras positioned on homes in the area. The Silverado has two doors and an extended bed with no bed liner, and it is missing the plastic molding that goes around the perimeter of the bed. The Silverado as pictured on the videos is two-toned, primarily white in color with a darker, possibly sage green trim around the lower paneling of the truck. There is a raised vent in the middle of the front hood. The Chevy bowtie emblem is visible on the rear tailgate and a 4x4 sticker is seen above the rear wheel well. This distinctive looking truck was captured

on a license plate reader and found to have PA registration ▮▮▮▮▮▮. The vehicle was confirmed to be a 2010 Chevy Silverado registered to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

   11. A separate video was obtained from a residence on Ligonier Street that shows the distinctive looking Silverado traveling southwest on Ligonier Street and making a right-hand turn into a parking lot adjacent to the Trinity Mission Baptist Church at approximately 8:56 p.m., within one minute of the explosion. Two individuals were captured on camera coming from the vicinity of the parked Silverado. The individuals both appear to be white males. One is noticeably taller than the other. The taller individual appears to have a bald head and is dressed in pants, long sleeves, and sneakers. He was carrying an object consistent with a toolbox in his right hand and an object consistent with a bag in his left hand. The shorter individual appears to have a short haircut with darker, possibly brown colored hair and is dressed in pants, a hooded sweatshirt and reflective sneakers. The taller individual was walking to the left of the shorter individual, which would be consistent with the taller individual coming from the passenger side of the truck and the shorter individual coming from the driver's side. The two individuals exited the parking lot where the Silverado was parked and walked towards the vicinity of ▮▮▮ Ligonier Street. As the two individuals were walking across Ligonier Street, the camera captured one individual say something to the effect of "so it didn't even go off," as the other laughs. At approximately 9:21 p.m., the shorter individual with the hooded sweatshirt and reflective sneakers was seen running from the vicinity of ▮▮▮ Ligonier Street towards the parked Silverado. At approximately 9:32 p.m., the Silverado exited the church parking lot and proceeded southwest on Ligonier Street. At approximately 9:33 p.m., City of Pittsburgh cameras captured the Silverado turn from Liberty Avenue onto 31st Street and cross the 31st Street Bridge. The Silverado then turned left onto

Route 28 and exited at East Ohio Street. The Silverado then turned right onto Madison Avenue towards I-279 N. The vehicle was not seen on camera after this point. Travelling on I-279 N is consistent with the vehicle traveling towards its registered address of ███████████ ███████████.

12. On Monday, January 4, 2021, ATF Special Agents identified a confidential source (CS) who is familiar with ███ Ligonier Street and advised that the taller of the two suspects seen on the video is Charles BAKER. The CS advised that BAKER lives on the third floor of ███ Ligonier Street and has a history of making homemade explosive devices. The CS further stated that he/she is in BAKER's house frequently and knows that BAKER makes his explosive devices on the third floor of this house. The CS has personally seen the explosive devices in the residence. The CS also advised that BAKER has multiple firearms in the residence.

13. ATF conducted a query of BAKER's criminal history and learned that he was convicted of several offenses that would prohibit him from possessing firearms and ammunition to include the following felonies: Burglary (convicted August 8, 2011), Conspiracy to Commit Burglary (convicted August 8, 2011), Criminal Trespass-Break Into Structure (convicted February 15, 2018), and Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance (convicted February 15, 2018). For the last conviction, BAKER received a sentence of imprisonment of 9 – 18 months' imprisonment. As such, your Affiant believes that BAKER knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

14. Additionally, ATF conducted a Pennsylvania record of sale query, which indicated that BAKER has at least two handguns registered to him despite being a previously convicted felon.

15. The CS was shown the aforementioned video of the two suspects crossing Ligonier Street and stated that he/she was positive that the taller individual was Charles BAKER. The CS stated that he/she has known BAKER for 20 years and had no problem recognizing him. The CS did not recognize the shorter individual. After interviewing this CS and viewing BAKER's PA Justice Network photo, which lists him as being 6'04" tall, 200 pounds, bald, and having a beard, your Affiant believes there is probable cause to believe that Charles BAKER is the taller of the two individuals seen and was the passenger of the Silverado during this incident.

16. The CS went on to make unsolicited remarks about witnessing BAKER blow up a Porta-John. The CS advised that he/she was with BAKER when BAKER blew it up. The CS advised that he/she took cellphone photos of the blown-up Porta-John. The CS provided those photos to ATF Special Agent Ryan O'Sullivan. The photos provided were consistent with an unsolved bombing of a Porta-John which occurred on November 5, 2020, outside of ▮ Denny Street, which runs parallel to Ligonier Street. This was one of three similar, unsolved incidents which occurred between October 21, 2020, and November 10, 2020. The CS also advised that he/she witnessed BAKER throw a homemade explosive device off of a bridge, targeting the windshield of a train passing below the bridge.

17. The CS has a criminal history including misdemeanor convictions for theft, receiving stolen property, drug possession, DUI, and terroristic threats. The CS also has an extensive history of drug use. Nevertheless, your Affiant believes the CS to be credible because the information he/she provided to law enforcement has been independently corroborated, as described above, including his/her knowledge of BAKER and the other bombing incidents.

18. The CS is motivated by a desire to assist law enforcement, protect the public, and potentially receive assistance on a pending criminal matter.

19. On January 4, 2021, at approximately 8:50 p.m., ATF Special Agents conducted surveillance on ▬▬▬▬▬▬▬▬ and observed the Silverado parked in the driveway. ATF Special Agents Kevin Kauffman and Robert Manns observed cosmetic changes to the appearance of the vehicle, believed to be due to the fact that images of the truck were broadcasted on both local and national news highlighting the fact that police were seeking a two-toned pickup truck in connection with this incident. Special Agents Kauffman and Manns observed that the colored panels were removed from the lower portion of the doors. The PA license plate ▬▬▬▬ was still attached to the vehicle.

20. Your Affiant obtained Pennsylvania driver's licenses for the two registered owners of the suspect Chevy Silverado—▬▬▬▬▬▬▬. ▬▬▬▬'s driver's license was recently issued on October 1, 2020, and it lists an address which is believed to be unrelated to this investigation. ▬▬▬▬ listed the address of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, where ATF Special Agents observed the Silverado on January 4, 2021. After viewing ▬▬▬▬'s driver's license, which shows him as being 5'08" with a short brown hair cut, and comparing that to the video of the two suspects walking across Ligonier Street shortly after the explosion, your Affiant believes there is probable cause to believe that ▬▬▬▬ was in fact the shorter of the two individuals and was the driver of the Chevy Silverado during this incident.

21. Your Affiant is aware of several evidentiary items recovered during the investigation of the explosion scene on January 3, 2021. The items include, but are not limited to, explosion debris and surveillance video. The debris included cloth materials, metal container remains, cardboard, and nails. The amount of nails recovered at the scene, as well as the configuration of how they were found (distance from the blast seat and penetration of the vehicle's rear passenger side tire) indicate that nails were part explosive device that was intentionally

deployed in this location.

22. On January 4, 2021, your Affiant, along with other personnel from ATF Pittsburgh, including ATF Special Agent/Certified Fire Investigator Matthew Regentin, conducted an examination of the scene. SA/CFI Regentin advised your Affiant that the data collected during the investigation by Pittsburgh Police and ATF was consistent with the intentional deployment of an explosive device and that the investigation will be classified as incendiary. CFI Regentin further advised that he consulted an ATF Explosives Enforcement Officer (EEO). CFI Regentin advised that the addition of metal shrapnel (nails) to the explosive device indicates that the device would qualify as a "destructive device" as defined by federal law under Titles 18 and 26. The final device determination will be conducted by an ATF Explosives Enforcement Officer (EEO) pending a review of results of the examination by Allegheny County Laboratory and a physical examination of the evidence by an ATF EEO.

23. Your Affiant knows through training, knowledge and experience that improvised explosive devices (IEDs) are a sub-category of destructive devices and can take many forms. These devices can be constructed as homemade weapons and often consist of an explosive filler placed inside of a confinement container. Your Affiant knows that IEDs or other destructive devices typically contain components that are assembled into an explosive 'train.' This routinely involves a container that is capable of holding a quantity of explosive and an initiating system. Explosives are classified as low explosives or high explosives. The classification is based upon the blast velocity of the explosives. Explosives with less than a 3,000 feet per second blast velocity, such as black or smokeless powder, are considered low explosives. Explosives such as dynamite, TNT, C-4, or other explosives used in commercial or military applications, have a blast velocity of greater than 3,000 feet per second and are considered high explosives. Your Affiant

knows that when placed into confinement and initiated, low explosives can create an explosion with a blast velocity commensurate with high explosives. It is also possible to make homemade explosive materials that are considered high explosives.

24. Your Affiant knows that IEDs can be initiated with a non-electrical initiation system such as a fuse or wick. IEDs can also be initiated with an electric system, which includes a power source such as a battery and a switch that can be activated remotely or on the IED itself.

25. Your Affiant knows that pipes and tubes can be used as confinement containers for IEDs. Other containers might be used, as long as the container provides confinement needed for low explosives to detonate.

26. Once the device is initiated, a rapid chemical reaction creating combustion gases causes the expansion of the container and a nearly instantaneous explosion. The container, which can be made of metal, plastic, or some other hard material can fragment into pieces that are propelled at a high rate of speed and can seriously injure or kill people. In addition, materials called shrapnel, can be added to the IED by the manufacturer with the intent of creating high velocity projectiles to cause damage to persons or property. These materials can include items such as nails, screws, nuts, bolts, BB's, and other items made of hard material that can become projectiles in an explosion.

27. Your Affiant knows that it is unlawful for an individual to manufacture, possess, or transfer a destructive device without first being registered in ATF's National Firearms Transfer Record (NFA) registry and without serial numbers being issued for said NFA weapons (*i.e.*, destructive devices). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████, hence, any possession of destructive devices by Charles BAKER would be in violation of 26 U.S.C. § 5861(d). Such possession would also be in violation of 18 U.S.C. § 922(g)(1) because, as described above, BAKER is a felon.

28. On January 5, 2021, a federal search warrant was obtained to search (1) BAKER's residence, located at ██████████████████████████; (2) ████████'s residence, located at ████████████████████████; and (3) the Silverado truck used in the bombing.

29. The search warrants were executed on January 5, 2021, at approximately 2:30 p.m.

30. BAKER was not home at the time of the search warrant execution. At the time of the writing of this affidavit, law enforcement had only begun to search the residence. So far, they have recovered ammunition and nails. As explained above, BAKER is a felon and not permitted to possess ammunition. This potential charge is still being investigated.

31. ████████ was home at the time of the search warrant execution. He agreed to speak to law enforcement and he informed law enforcement that BAKER asked him for a ride on January 3, 2021, and that once in the vehicle while they were driving on Penn Avenue, BAKER pulled out some type of device. According to ████, BAKER lit the device with a lighter and threw it out the window.

32. Based on the above, I have probable cause to believe that BAKER violated 26 U.S.C. § 5861(d) and 18 U.S.C. § 922(g)(1).

The above information is true and correct to the best of my knowledge, information, and belief.

/s/ Ryan P. O'Sullivan
Ryan P. O'Sullivan
Special Agent, ATF

Sworn to before me *telephonically*
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 5th day of January 2021.

*Cynthia R. Eddy*
HONORABLE CYNTHIA REED EDDY
UNITED STATES CHIEF MAGISTRATE JUDGE
Western District of Pennsylvania